M. David Eckersley (0956)
PRINCE, YEATES & GELDZAHLER
175 East 400 South, Suite 900
Salt Lake City, Utah 84111
Telephone: 801-524-1000
mde@princeyeates.com

and

Kyle Schonekas, La. Bar No. 11817
Patrick S. McGoey, La. Bar No. 24549
Andrea V. Timpa, La. Bar No. 29455
Katherine McCray, La. Bar No. 31921
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 680-6050
kyle@semmlaw.com
patrick@semmlaw.com
andrea@semmlaw.com
katherine@semmlaw.com

*Attorneys for all Plaintiffs*
*except Dandrea, Inc. and KMD, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al. | : : **JOINT STATUS REPORT** |
| Plaintiffs, | : : Civil No. 2:09-CV-221 |
| vs. | : : Judge Dale A. Kimball |
| | : Magistrate Judge Paul M. Warner |
| DHL EXPRESS (USA), INC., an Ohio Corporation, and DPWN Holdings (USA), Inc. | : Magistrate Judge David Nuffer : : |
| Defendants. | : : |

1659.kmm.Joint Status Report.08.27.10.v.3

Pursuant to this Court's order of June 10, 2010, the parties submit the following report on the status of discovery.

## I. OVERVIEW OF THE CASE

Plaintiffs are 121 franchisees of Unishippers Global Logistics, L.L.C. ("Unishippers"), all of whom market and resell shipping and freight services of other companies to customers across the United States. In order to obtain low-cost shipping services for its franchisees and customers, Unishippers entered into certain contracts with DHL Express (USA), Inc. ("DHL"), including a National Account Agreement and a Reseller Agreement. In November of 2008, DHL publicly announced that it was withdrawing from the domestic shipping market. DHL also notified Unishippers that it was terminating its contracts with Unishippers. On November 18, 2008, Unishippers filed suit against DHL, captioned *Unishippers Global Logistics, LLC v. DHL Express (USA), Inc.*, Civil Case No. 08-894 ("the Unishippers Action"), alleging that DHL breached the parties' agreements. Plaintiffs subsequently filed this action against DHL and its parent corporation, DPWN Holdings (USA), Inc. ("DPWN"), alleging they are third-party beneficiaries of the National Account Agreement and the Reseller Agreement.

DHL has asserted counterclaims against 115 of the Plaintiffs for breach of contract, account stated, open account, and quantum meruit. These counterclaims arise out of alleged amounts due from Plaintiffs for shipping services provided by DHL.

Unishippers and DHL have exchanged hundreds of thousands of pages of documents in the Unishippers Action, and at least twenty depositions have been taken. This discovery covers the claims at the heart of both the Unishippers Action and this action. On August 27, 2010, DHL produced to Plaintiffs all of the documents it produced to Unishippers in

the Unishippers Action. Although the Plaintiffs will need some follow-up depositions on these issues, the bulk of the discovery on these issues already has been completed. Thus, the majority of new discovery necessary in this case will focus on DHL's counterclaims.

## II.   STATUS OF DISCOVERY IN PHASE ONE

### A.   Plaintiffs' Position

In accordance with this Court's order, on June 4, 2010, Defendants identified four plaintiffs for the initial phase of discovery ("the Selected Plaintiffs"), and on June 11, 2010, the Selected Plaintiffs identified four witnesses for deposition. The Selected Plaintiffs each served Requests for Production, Interrogatories, and Requests for Admission on defendant DHL, and plaintiff Gulf Coast Shippers Limited Partnership ("Gulf Coast") served Interrogatories on defendant DPWN. DHL then served Requests for Production, Interrogatories, and Requests for Admission on each of the Selected Plaintiffs. The parties have exchanged written objections and responses to all of these discovery requests.

Over the course of approximately one month, undersigned counsel have worked cooperatively to attempt to limit the scope of electronic discovery and identify search terms for e-mail communications. First, Defendants' counsel agreed to produce to Plaintiffs all of the documents that were produced to Unishippers in the Unishippers Action and to run additional searches based on search terms mutually agreeable to the parties in this action. The parties agreed to limit the type of electronic information that will be searched by all parties to e-mail communications and attachments. The parties agreed to limit the searches to a time period of

January 1, 2008 through August 1, 2009.[1]  Plaintiffs agreed to limit their searches of DHL e-mails to the e-mail files for the DHL custodians previously identified in the Unishippers action.

On August 12, 2010, the parties reached agreement on the search terms that will be used to search the Plaintiffs' e-mail files.  Plaintiffs have begun running those searches.  The searches of the first Plaintiff's e-mail files resulted in more than 8,000 "hits."  Plaintiffs' counsel are in the process of reviewing these hits for privilege and confidentiality and will produce them to Defendants as soon as the review is completed.  Plaintiffs' e-discovery vendor is searching the e-mail files of the remaining three plaintiffs, and the documents will be reviewed and produced on a rolling basis as soon as possible.  Based upon the volume of each plaintiff's e-mail files, Plaintiffs' counsel estimate that the searches of the four Selected Plaintiffs' e-mail files will result in approximately 37,000 hits, all of which must be reviewed for privilege and confidentiality before they may be processed into load files and produced to the Defendants.  Plaintiffs hope to produce documents responsive to the Defendants' requests from the first four plaintiffs by October 15, 2010.

On August 24, 2010, the parties reached agreement on the search terms that will be used to search DHL's e-mail files.  Defendants' counsel have informed Plaintiffs' counsel that these search terms produced approximately 12,000 hits, and have suggested that it will take several weeks to review those documents before they are produced.

Plaintiffs must review the documents produced by DHL before taking depositions of DHL's witnesses.  Notably, DHL has resisted running separate searches for each individual plaintiff by name.  Instead, it is DHL's position that it can run searches for the word

---

[1]   DHL has disclosed that some of its custodians' e-mail files were collected prior to August 1, 2009. Plaintiffs have agreed to accept production of e-mails from the files that already were collected.  If, after review of these files, it appears that additional collection is necessary for the time period between the collection date and August 1, 2009, the parties may revisit the issue.

"Unishippers" (or variants thereof), and that such searches will retrieve information related to the plaintiffs, all of whom are Unishippers franchisees. In the interest of efficiency and cooperation, Plaintiffs have agreed to this method of searching and producing emails. However, it will result in the production of close to a million pages of electronic information that is not differentiated or separated in any way by plaintiff. Plaintiffs will be producing their documents to DHL in a manner that clearly demonstrates which plaintiff has produced the documents. DHL will have a simple and clear method to identify the documents related to each plaintiff. But, in order to find information related to each plaintiff, Plaintiffs' counsel will be required to run searches on the database and review hundreds of thousands of documents. Plaintiffs' counsel will need time to review these documents and identify the information related to each plaintiff in order to prepare for the depositions of DHL's witnesses. If DHL immediately produces the documents from the Unishippers action, and then produces the additional documents as soon as they have been reviewed, Plaintiffs believe they can be ready for depositions of DHL's witnesses by the end of October.

DHL has noticed depositions of each of the four Selected Plaintiffs, pursuant to Federal Rule of Civil Procedure 30(b)(6), and those depositions have been scheduled for September 7-10, 2010. Plaintiffs' counsel repeatedly have informed Defendants' counsel that they likely will not be able to produce responsive documents in advance of these deposition dates. On August 23, 2010, Defendants' counsel stated that they wished to go forward with the depositions even if responsive documents have not yet been produced. They requested that Plaintiffs produce their financial information in advance of the deposition. Plaintiffs will make every effort to do so.

Plaintiffs have requested dates for the depositions of DHL's witnesses; however, in light of the dispute outlined in Section IV, below, the parties have agreed to postpone scheduling those depositions until the Court has resolved the dispute.

To date, neither party has produced any documents or electronically stored information. The Selected Plaintiffs are working diligently to produce the financial data requested by DHL in advance of their depositions, and to produce the remaining requested documents as soon as possible.

Plaintiffs respectfully submit that document production and depositions must be completed in the first phase of discovery before any party will be in a position to propose a schedule for discovery from the remaining plaintiffs. Therefore, Plaintiffs request that this Court strike the September 15, 2010 scheduling hearing and set a date for a revised Joint Status Report at the beginning of November, 2010, with a hearing date soon thereafter.

### B. **Defendants' Position**

Under the Court's June 10, 2010 Scheduling Order, Defendants were ordered to select four Plaintiffs with which to proceed with discovery in Phase One. Defendants identified plaintiffs AEA Services, Inc., Gulf Coast Shippers Limited Partnership, Kasel Enterprises, L.L.C., and Lake Country Logistics, L.L.C. (collectively, the "Selected Plaintiffs").

Written Discovery

Defendants and the Selected Plaintiffs have both propounded and responded to a first set of written discovery requests, including requests for production, interrogatories, and requests for admission. The Selected Plaintiffs have propounded a second set of written discovery, and Defendants' responses are due September 10. This discovery has provided a framework for written discovery of the remaining Plaintiffs, and Defendants are prepared to

move forward with those remaining Plaintiffs.

<u>Document Productions</u>

As mentioned above, DHL agreed to provide to Plaintiffs the documents that DHL produced in the Unishippers Action, which consists of over 700,000 pages. DHL produced those documents to Plaintiffs on August 26.

In addition, the parties have met and conferred on the production of additional electronically-stored information ("ESI") by DHL and Plaintiffs, and have agreed to use search terms to limit the review of potentially relevant documents. The Selected Plaintiffs have identified search terms that broadly apply to all of the Plaintiffs, and Defendants expect to complete their review and production of these documents before the status conference scheduled for September 15. Defendants, in turn, have identified search terms for the Selected Plaintiffs, and Defendants expect the Selected Plaintiffs to produce ESI over the next few weeks. Defendants have also asked that Plaintiffs begin producing any non-ESI before the depositions of their corporate representatives scheduled for September 7-10.

<u>Depositions</u>

On July 19, Defendants noticed the depositions of each of the Selected Plaintiffs pursuant to Federal Rule of Civil Procedure 30(b)(6) for August 17-20. At Plaintiffs' request, Defendants agreed to reschedule these depositions for September 7-10, and the parties have now scheduled the depositions for those dates.

The Court also ordered the Selected Plaintiffs to identify fact witnesses to be deposed. The Selected Plaintiffs have identified four witnesses, but have not yet scheduled those depositions. Plaintiffs insist that the parties be allowed to depose individuals at this time and then again (possibly multiple times) later during discovery. As discussed in section IV below,

Defendants do not believe that the June 10 Scheduling Order intended to grant leave of any party to depose a witness more than once.

### III.    PROPOSALS FOR PHASE TWO

#### A.    Plaintiffs' Position

Plaintiffs respectfully submit that it is premature to make any proposals concerning the second phase of discovery. Because the four Selected Plaintiffs have not yet been deposed, the parties do not know whether all of the remaining 117 Plaintiffs must be deposed and, if so, the length of time necessary for each deposition. Because DHL's witnesses have not yet been deposed, the parties do not know how many addition DHL witnesses must be deposed or the length of time necessary for each deposition. The number and length of the depositions will have a significant impact on the amount of time required for the remaining phase of discovery, and the parties simply are not in a position to make educated estimates or proposals regarding depositions in the second phase of discover.

Similarly, because the parties have not reviewed the four Selected Plaintiffs' document production, the parties do not know whether the document requests and e-mail search terms have produced relevant, useful documents. Thus, the parties do not know whether all of the remaining 117 Plaintiffs must produce the same volume of documents based on the same search terms and procedures that were used in the first phase of discovery. Plaintiffs estimate that the cost of electronic discovery for the first four plaintiffs will be between $25,000.00 and $35,000.00 in vendor expenses alone. Plaintiffs hope that the parties can learn from the discovery taken from the four Selected Plaintiffs to streamline document production in the second phase of discovery, in order to avoid hundreds of thousands of dollars of additional costs

for electronic discovery. However, the parties are not in a position to make educated proposals regarding future production of documents at this time.

Therefore, Plaintiffs respectfully request, in accordance with this Courts' August 18, 2010 Notice, that the Court strike the September 15, 2010 hearing and set a date for a revised Joint Status Report at the beginning of November, 2010. In that Report, the parties can provide a comprehensive report on the first phase of discovery and propose a plan and schedule for the remaining conduct of the case.

B.   **Defendants' Position**

This initial phase of discovery is nearly complete. The parties have exchanged and responded to written discovery, agreed to the terms for the production of ESI, begun producing documents for all Plaintiffs, and are moving forward with depositions in two weeks. As discussed above, Defendants expect to complete the depositions of the Selected Plaintiffs by September 10.

Defendants have produced all of the documents from the Unishippers Action and expect to have produced any additional documents relevant to Plaintiffs within the next four weeks. Additionally, the parameters for review and production of ESI have been agreed to, and the framework for written discovery has been determined during the initial phase of discovery. Accordingly, Defendants believe that in Phase Two, the parties will move forward with discovery related to the remaining 117 Plaintiffs. Defendants therefore propose the following schedule:

October 1, 2010 – January 31, 2011: Defendants respond to written discovery related to the remaining Plaintiffs. The remaining Plaintiffs respond to Defendants' written discovery and produce documents.

February 1, 2011 – March 31, 2011:  The parties conduct any follow-up discovery and proceed with depositions.  <u>Fact discovery cut-off would be March 31, 2011</u>.

April 1, 2011 – May 31, 2011:  The parties exchange expert reports and conduct expert depositions.  <u>Expert discovery cut-off would be May 31, 2011</u>.

June 30, 2011:  Deadline for filing dispositive motions.

September 9, 2011:  Hearing on dispositive motions.

**September 26, 2011:  Trial.**

IV.   **DISPUTED ISSUES**

    A.   **Plaintiffs' Position**

The parties have been unable to reach agreement on the subject of whether the four defense witnesses identified for deposition in the first phase of discovery will be made available for deposition in the second phase of discovery.

This Court instructed the parties to conduct the first phase of discovery in part to determine how many depositions would be required during the course of this litigation.  In particular, the Court asked the parties to determine whether each plaintiff would require a deposition of a fact witness with information specific to that plaintiff.  Based upon discovery conducted to date, Plaintiffs' counsel do not believe that there are 121 separate individuals at DHL whose depositions must be taken by the plaintiffs; instead, Plaintiffs believe they will need to depose several individuals on issues of liability that are common to all the Plaintiffs and a small number of current and/or former DHL employees in connection with the counterclaims that have been asserted against 115 of the Plaintiffs.

It appears that these counterclaims are based on thousands of individual invoices for shipping services.  Unfortunately, the parties had a long history of disputes regarding billing

and the application of payments. Therefore, discovery may be necessary at an individual-invoice level in order to determine whether a service was provided, whether the invoiced amount was disputed, why the amount was disputed, whether an amount was paid, and whether the amount paid was properly applied to the invoice.

The Selected Plaintiffs have identified four key DHL witnesses as the individuals whose depositions should be taken during this first phase of discovery. These individuals were involved in the process of billing the plaintiffs, identifying invoices that allegedly were not paid within the required time period, issuing pre-default letters and final demand letters to certain plaintiffs, receiving disputes regarding those allegedly unpaid amounts from the plaintiffs, investigating those disputes, and attempting to reach resolution. Thus, these individuals appear to possess information that is highly relevant to the 115 separate and individual counterclaims against 115 of the Plaintiffs.

Each Plaintiff is entitled to take depositions of individuals who possess information relevant to the claims and defenses in this case. If there were 115 separate lawsuits, each of the DHL witnesses could expect to be deposed 115 times. Plaintiffs do not suggest that each witness should be deposed 115 times, or for seven hours per Plaintiff. However, each Plaintiff is entitled to ask each witness about the knowledge she may have about each of the Plaintiffs and the counterclaims against each. Therefore, it is possible that certain witnesses may be required to testify for more than seven hours and on more than one occasion. Plaintiffs believe that the most efficient way to determine the number of depositions that will be required for the remainder of this case and the length of time necessary for each deposition is to depose these four individuals during the first phase of discovery about their general knowledge and knowledge of the four Selected Plaintiffs, with the expectation that they will be deposed again

1659.kmm.Joint Status Report.08.27.10.v.3

11

about their knowledge of the remaining plaintiffs after documents are produced in connection with the remaining plaintiffs.

However, Defendants have taken the position that their witnesses will be produced for deposition only once. Thus, Defendants have taken the position that all 115 of the plaintiffs/counterclaim defendants must share *one* seven-hour deposition of each knowledgeable employee at DHL. But Plaintiffs are defending 115 counterclaims, and DHL will have the opportunity to take 115 individual depositions of each plaintiff/counterclaim defendant and to ask questions about the amounts allegedly due and owing. This clearly is not equitable or fair, and it gives DHL the opportunity to take significantly more discovery than the Plaintiffs on subject of the counterclaims.

Plaintiffs must be allowed to obtain information about the counterclaims. Each Plaintiff must be allowed to depose the witnesses. The parties can use the information gained in the first set of depositions to determine the length of time that is necessary for additional depositions of these witnesses related to the remaining Plaintiffs. Plaintiffs submit that this is the most efficient and least burdensome method for approaching a complex problem. Indeed, Plaintiffs believe this method most closely comports with the intent of this Court's order regarding phased discovery: it will allow the parties and the Court to determine how much discovery is needed.

Plaintiffs respectfully request that this Court set a hearing on this issue or make a ruling on this issue as soon as possible, because the witness depositions cannot go forward until the parties receive a decision regarding the scope of the four initial depositions.

B.   **<u>Defendants' Position</u>**

Plaintiffs have taken the position that individuals deposed during discovery may be deposed a second (and theoretically a third, fourth, and fifth time) in subsequent phases of discovery. Defendants do not believe there is any basis at this time for subjecting the parties and witnesses to multiple depositions of the same individuals. If a party believes it needs additional discovery before deposing an individual (including discovery about other Plaintiffs), that party should wait until it has this information before proceeding with the deposition.

Plaintiffs' proposal would subject the parties and the witnesses to an incredible burden. Many of the witnesses in this case are located throughout the country, therefore counsel will have to travel around the country multiple times if these individuals are deposed more than once. Furthermore, many of the individuals may no longer be employed by Defendants or Plaintiffs. These individuals will have to take time off from work (or their personal lives) to be deposed, and there is no need to subject them to this undue burden when all a party needs to do is wait until it has all discovery before proceeding with these depositions.

Furthermore, allowing individuals to be deposed more than once will result in unnecessary delay. There is no need to split a person's deposition into two, three, or four depositions over the course of several months. It is far more efficient for the parties to take a single deposition covering all issues (and all Plaintiffs) after all the necessary discovery is obtained. Not only is it more efficient, but it would be far easier to schedule a single deposition than to attempt to schedule witnesses for depositions on several occasions.

Plaintiffs' proposal would result in unnecessary cost, inconvenience, and delay for both parties and all witnesses. On the other hand, Defendants' proposed schedule and procedure for depositions permits (and encourages) the parties to obtain all the necessary discovery before

proceeding with depositions.  To the extent any party believes it has sufficient information to proceed with a deposition before obtaining all discovery, it may do so, but consistent with Rule 31 of the Federal Rules of Civil Procedure, the party should have to seek leave of the Court to take the deposition of that same person again at a later time.  For example, Defendants have no intention of taking these depositions a second time, and propose that they only be allowed to do so with leave of the Court.  This should apply equally to both sides.

Dated this 27th day of August, 2010.

Respectfully submitted,

*/s/ Katherine McCray*
Kyle Schonekas
Patrick S. McGoey
Andrea V. Timpa
Katherine McCray
SCHONEKAS, EVANS, MCGOEY &
   MCEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130

*Attorneys for all Plaintiffs*
*except Dandrea, Inc. and KMD, Inc.*


*/s/ Khai LeQuang*
Khai LeQuang
Christopher S. Ruhland
Edwin V. Woodsome, Jr.
William W. Oxley
Orrick Herrington & Sutcliffe
777 S. Figueroa St. Ste, 3200
Los Angeles, CA 90017-5855

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of August, 2010, I caused to be served via Court's ECF electronic filing system the foregoing Joint Status Report to the following:

- **Blaine J. Benard**
  blaine.benard@hro.com,tish.howell@hro.com

- **M. David Eckersley**
  mde@princeyeates.com,geniel@princeyeates.com,docket@princeyeates.com

- **Khai LeQuang**
  klequang@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com

- **Katherine M. McCray**
  katherine@semmlaw.com,jennifer@semmlaw.com,andi@semmlaw.com

- **Patrick S. McGoey**
  patrick@semmlaw.com,rachel@semmlaw.com

- **William W. Oxley**
  woxley@orrick.com,sspencer@orrick.com

- **Christopher S. Ruhland**
  cruhland@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com

- **Kyle D. Schonekas**
  kyle@semmlaw.com,jennifer@semmlaw.com

- **Andrea V. Timpa**
  andrea@semmlaw.com,andi@semmlaw.com,rachel@semmlaw.com

- **Edwin V. Woodsome , Jr**
  ewoodsome@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com

- **Maria G. Marks**
  maria@semmlaw.com, rachel@semmlaw.com

*/s/ Katherine McCray*
Katherine McCray, 31921

I further certify that on August 27, 2010 I mailed the foregoing by placing same in the United States mail, postage prepaid and properly addressed, to the following non-CM/ECF participants:

Dandrea, Inc. and KMD, Inc.
c/o Kevin Dandrea
4098 WILKES DR
MELBOURNE, FL 32901

*/s/ Jennifer Rabalais*_____