M. David Eckersley (0956)
PRINCE, YEATES & GELDZAHLER
175 East 400 South, Suite 900
Salt Lake City, Utah  84111
Telephone:  801-524-1000
mde@princeyeates.com

and

Kyle Schonekas, La. Bar No. 11817
Patrick S. McGoey, La. Bar No. 24549
Maria G. Marks, La. Bar No.23208
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
Telephone:  (504) 680-6050
kyle@semmlaw.com
patrick@semmlaw.com
maria@semmlaw.com

*Attorneys for all Plaintiffs*
*except Dandrea, Inc. and KMD, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al. | : | **SECOND JOINT STATUS REPORT** |
| | : | |
| Plaintiffs, | : | Civil No. 2:09-CV-221 |
| | : | |
| vs. | : | Judge Dale A. Kimball |
| | : | Magistrate Judge Paul M. Warner |
| DHL EXPRESS (USA), INC., an Ohio Corporation, and DPWN Holdings (USA), Inc. | : | Magistrate Judge David Nuffer |
| | : | |
| | : | |
| Defendants. | : | |

Pursuant to this Court's order of September 1, 2010, the parties submit the

following report on the status of discovery.

## I.   <u>CASE OVERVIEW</u>

Plaintiffs are 121 franchisees of Unishippers Global Logistics, L.L.C. ("Unishippers"), all of whom market and resell shipping and freight services of other companies to customers across the United States.  In order to obtain low-cost shipping services for its franchisees and customers, Unishippers entered into certain contracts with DHL Express (USA), Inc. ("DHL"), including a National Account Agreement and a Reseller Agreement.  In November of 2008, DHL publicly announced that it was withdrawing from the domestic shipping market.  DHL also notified Unishippers that it was terminating its contracts with Unishippers.  On November 18, 2008, Unishippers filed suit against DHL, captioned Unishippers Global Logistics, LLC v. DHL Express (USA), Inc., Civil Case No. 08-894 ("the Unishippers Action"), alleging that DHL breached the parties' agreements.  Plaintiffs subsequently filed this action against DHL and its parent corporation, DPWN Holdings (USA), Inc. ("DPWN"), alleging they are third-party beneficiaries of the National Account Agreement and the Reseller Agreement.

DHL has asserted counterclaims against 115 of the Plaintiffs for breach of contract, account stated, open account, and quantum meruit.  These counterclaims arise out of alleged amounts due from Plaintiffs for shipping services provided by DHL.

Unishippers and DHL have exchanged hundreds of thousands of pages of documents in the Unishippers Action, and at least twenty depositions have been taken.  This discovery covers the claims at the heart of both the Unishippers Action and this action.  DHL has produced to Plaintiffs all of the documents it produced to Unishippers in the Unishippers Action.  Although the Plaintiffs will need some follow-up depositions on these issues, the bulk of the

discovery on these issues already has been completed. Thus, the majority of new discovery necessary in this case will focus on DHL's counterclaims.

## II.   REPORT ON DISCOVERY - PHASE ONE

### A.   Discovery Authorized in Phase One

This Court conducted an Initial Pretrial Conference on May 26, 2010.[1] In a Scheduling Order dated June 10, the Court ordered that discovery should proceed "only with respect to four plaintiffs selected by Defendants" and a limited number of related witnesses selected by Plaintiffs, to be completed prior to a second phase of discovery as to all the claims and counterclaims in the case.[2] Defendants identified plaintiffs AEA Services, Inc. ("AEA"), Gulf Coast Shippers Limited Partnership ("Gulf Coast Shippers"), Kasel Enterprises, L.L.C. ("Kasel"), and Lake Country Logistics, L.L.C. ("Lake Country Logistics) (collectively, the "Selected Plaintiffs") for participation in the first phase of discovery. Likewise, Selected Plaintiffs identified four witnesses they intended to depose.

Under the Scheduling Order, Defendants were authorized to serve up to 25 requests for production, 25 interrogatories and requests for admission generally applicable to all of the Selected Plaintiffs, and 25 individual interrogatories and requests for admission specific to each Selected Plaintiff. Defendants were also permitted to depose each Selected Plaintiff. Similarly, each Selected Plaintiff was authorized to serve up to 25 requests for production, 25 global interrogatories and requests for admission, and 25 individual interrogatories and requests for admission to Defendants. Selected Plaintiffs were also permitted to depose fact witnesses related to each Selected Plaintiff.

---

[1]    *See* Record Doc. 64, Scheduling Order (6/10/10).
[2]    *See id.*

On August 27, 2010, the parties submitted an interim Joint Status Report, reporting that the first phase of discovery was underway but not complete.[3]  On September 1, 2010, this Court ordered the parties to proceed with depositions and production of electronically stored information in Phase One, and to submit another Joint Status Report on November 8, 2010, reporting on the discovery process and proposing a discovery plan for the remainder of the case.[4]

> ### B.     Discovery Completed to Date

> #### 1.     Written Discovery

The four Selected Plaintiffs and both Defendants have responded to written discovery.  Each Selected Plaintiff responded separately to 25 "general" interrogatories, 25 requests for production of documents, and 12 requests for admission.  In addition, Gulf Coast Shippers responded to four "individual" interrogatories.

DHL responded separately to 18 requests for production of documents, four interrogatories, and two requests for admission that were submitted by each Selected Plaintiff (that is, each plaintiff asked the same questions to DHL, and DHL responded to each Plaintiff individually).  In addition, DHL responded to one separate request for production from Gulf Coast Shippers, five requests for production from AEA, three interrogatories from Gulf Coast Shippers, and nine interrogatories from AEA.

DPWN responded in writing to three interrogatories from Gulf Coast Shippers; however, it responded solely with objections.  Defendants' counsel has agreed to supplement DPWN's response to provide substantive answers to the interrogatories by next week.

---

[3]     Record Doc. 78, Joint Status Report (8/27/10).
[4]     Record Doc. 79, Order Regarding Schedule (9/1/10).

## 2.      **Document Production**

Each Selected Plaintiff provided copies of its e-mail files to Plaintiffs' counsel; those copies were searched by an e-discovery vendor based on a list of search terms agreed to by attorneys for all parties; and  Plaintiffs' counsel then reviewed the results of the searches for relevance, responsiveness, and privilege.  Each Selected Plaintiff also searched its paper files and financial records for relevant, responsive, non-privileged information.  In total, the four Selected Plaintiffs collectively produced more than 1,000,000 pages of documents.  These documents were separately bates-labeled with numbers indicating the producing party.  Plaintiffs are producing additional documents, including tax returns next week.

DHL produced to Plaintiffs the documents that it had produced to Unishippers in the Unishippers matter, totaling approximately 700,000 pages, plus native files.  Most of these documents are emails from January 1, 2006 through January 21, 2009 taken from 26 DHL employees.[5]  In addition, DHL searched the e-mail files that it had collected from selected employees in connection with the Unishippers matter for additional search terms agreed to by counsel for all parties.  As a result of these searches, DHL produced approximately 10,000 additional pages of documents.

The Selected Plaintiffs intend to serve several requests for production of documents on DPWN, and will do so after receiving substantive responses to the interrogatories that were served on DPWN and objected to in June.  As explained above, Defendants' counsel has agreed to produce supplemental, substantive responses to the interrogatories.  The Selected Plaintiffs will serve their requests for production on DPWN as soon as possible after receipt of the interrogatory responses.

---

[5]      In addition, Unishippers has provided to Plaintiffs over 500,000 pages of emails and documents that it previously produced to DHL in the Unishippers matter.

### 3.     Depositions

DHL took each Selected Plaintiff's corporate deposition.  The depositions ranged in length from approximately 5.5 to 6.5 hours (exclusive of breaks).  Plaintiffs have taken two depositions of DHL witnesses (Jacqueline Benavidez and Syndie Miller).  Each deposition lasted approximately 4.5 to 6.5 hours and included separate questions and answers related to each of the four Selected Plaintiffs.  Plaintiffs scheduled a third deposition of a former DHL employee, Linda Heard, for October 28, 2010, but the deposition was postponed due to a death in her family.  Finally, Plaintiffs noticed the deposition of Beatrice Straub, but a week before the deposition, DHL's counsel learned that Ms. Straub had just left DHL and advised Plaintiffs of this.  The parties are still attempting to coordinate this deposition.

### C.     Lessons Learned from Phase One

### 1.     Plaintiffs' Position

The first phase of discovery has taken six months.  The Selected Plaintiffs have paid more than $40,000 to an electronic discovery vendor.  Plaintiffs have used more than 600 hours of attorney and paralegal time on the discovery process.  Although this process has been costly and time-consuming, it has enabled the parties to more fully understand the scope of discovery necessary in the remainder of this case.

### (a)     Depositions

First, Plaintiffs have learned that they do not need as many depositions as originally anticipated.  Although there are 121 separate plaintiffs, Plaintiffs do not believe there is any need to take 121 depositions.  As discussed above, Plaintiffs need to take the depositions of Ms. Heard and Ms. Straub.  Plaintiffs will require additional depositions of the four witnesses identified in Phase One (Ms. Benavidez, Ms. Miller, Ms. Heard, and Ms. Straub) because these

witnesses posses knowledge of facts relevant to the individual counterclaims against 115 of the Plaintiffs.

In addition, Plaintiffs have identified three individuals who worked in the cash and/or dispute departments at DHL who possess knowledge of facts relevant to DHL's counterclaims against the Plaintiffs/Counterclaim Defendants. Plaintiffs plan to take one deposition of each of these three witnesses; however, if these witnesses have knowledge of individual plaintiffs, it may be necessary to take more than one deposition of each witness, or to depose each witness for longer than seven hours.

Plaintiffs also need one corporate deposition of DHL, one corporate deposition of DPWN, and six additional one-time depositions of witnesses with knowledge of liability, damages, and DHL's counterclaims. Plaintiffs anticipate that they will be able to obtain all of the information needed by *all* 121 of the Plaintiffs in a single deposition from each of these witnesses.[6] Three of these witnesses previously were deposed in the Unishippers matter. Therefore, Plaintiffs will be able to tailor questioning to topics not covered in the earlier depositions and/or topics unique to Plaintiffs' claims and defenses in this case.

In summary, Plaintiffs anticipate the need for the following depositions:

- Four witnesses who will testify in Phase One, then again in later phases of the case about DHL's counterclaims against 115 Plaintiffs/Counter-Defendants.

- Three witnesses who will likely only need to testify once regarding DHL's counterclaims, but who may be required to testify again if they have knowledge of individual Plaintiffs.

---

[6] If the 30(b)(6) representatives have information particular to each Plaintiff, Plaintiffs may need more than one deposition, and/or more than seven hours.

- Corporate deposition of DHL.[7]

- Corporate deposition of DPWN.

- Six one-time depositions related to liability, damages, and DHL's counterclaims.

With respect to Defendants' depositions of Plaintiffs, Plaintiffs propose limiting each deposition to three hours in duration. This will allow the scheduling of several depositions each day, and will provide sufficient time for questions related to the unique facts specific to each Plaintiff's claims and defenses. Plaintiffs will work with Defendants to schedule these depositions in blocks of time in geographic regions convenient to the witnesses.

### (b)   Document Production

Plaintiffs anticipate serving several requests for production of documents on DPWN after receiving supplemental, substantive responses to the interrogatories previously served on DPWN. However, at this time, Plaintiffs do not anticipate serving much additional discovery on DHL. Plaintiffs will need follow-up production from DHL and production of documents specific to the remaining Plaintiffs, but Plaintiffs do not plan to serve extensive individual requests for production from the remaining 117 Plaintiffs.

Plaintiffs also believe that discovery *from* the remaining Plaintiffs can – and *should* – be significantly limited. The most expensive, time-consuming part of the discovery process thus far concerns production of e-mail communications. The parties worked cooperatively to agree to search terms for the Plaintiffs' emails, but the searches have produced hundreds of thousands of pages of irrelevant and duplicative information.[8] This information still

---

[7]   If DHL's corporate representatives have information specific to each plaintiff, Plaintiffs may need additional 30(b)(6) depositions of DHL.

[8]   Of the over 1,000,000 pages of documents produced by four Plaintiffs, DHL used only 32 of them in its corporate depositions of the four Plaintiffs.

must be reviewed, labeled, and produced, resulting in an unduly burdensome, excessively costly, and unnecessary process for all concerned.

Moreover, to the extent that there are any relevant, responsive, non-privileged email communications in this case, the vast majority – if not all – of those documents already have been produced.  Because the parties in this case have exchanged the email communications that were produced in the Unishippers case, the following information has already been produced in this case:

- *All* emails that *any* of the 121 Plaintiffs exchanged with DHL's collections department, the only department at DHL with which the Plaintiffs corresponded; [9]

- *All* emails that *any* Plaintiff exchanged with Unishippers.

- *All* emails regarding shipment disputes that Unishippers had with DHL;

- *All* emails between Unishippers and DHL regarding the contracts at issue and liability;

In light of these facts, and in light of the fact that, as the parties agreed in their previous Status Report, the majority of new discovery necessary in this case will focus on DHL's counterclaims, Plaintiffs respectfully submit that it is not necessary for the remaining Plaintiffs to search their e-mail files to produce millions of pages of additional documents.  Production of e-mails from the remaining Plaintiffs would be unnecessarily duplicative, and would constitute an extremely costly and undue burden on the Plaintiffs.  The only relevant, unique, and non-duplicative information to be produced by the remaining Plaintiffs is information that exists outside of e-mail, including Plaintiffs' financial and accounting records and franchise agreements

---

[9] The emails produced range from January 1, 2006 through January 31, 2009.

with Unishippers.   The elimination of unnecessary e-mail production from the remaining Plaintiffs could save *years* of discovery time and hundreds of thousands of dollars in expense.

        2.      **Defendants' Position**

Based upon Phase One of discovery, Defendants are prepared to make a number of adjustments that will streamline discovery and result in more focused ESI search terms and interrogatories.

The production of the Selected Plaintiffs' ESI for Phase One was relatively straightforward.  The parties agreed upon search terms on August 12, and responsive documents were produced on September 23 and 24.   Lake Country produced 1,214 documents (3,910 pages); AEA produced 2,111 documents (68,752 pages); Kasel produced 10,984 documents (132,519 pages); and Gulf Coast Shippers produced 53,658 documents (753,332).

Although the production was straightforward, it could have moved forward more quickly and with less inconvenience to either side.  As demonstrated by the foregoing figures, the Gulf Coast Shippers production eclipsed the production of the other Selected Plaintiffs. Notably, however, Gulf Coast's 750,000-page production could have been avoided if Plaintiffs had done what was asked of them and they agreed to do.   That is, Defendants repeatedly requested search term hit counts for each Selected Plaintiff in order to assess whether to revise the search terms and focus the document production—Plaintiffs agreed to provide such hit counts and did so for Kasel (August 31) and Lake Country (September 1).  Notwithstanding their agreement to provide hit counts for each Selected Plaintiff, Plaintiffs never provided hit counts for Lake Country or Gulf Coast.  So when Gulf Coast produced approximately 750,000 pages of documents days before Plaintiffs' depositions, Defendants were completely taken aback.  If the

hit counts had been shared with Defendants prior to Plaintiffs' production, Defendants would have attempted to reduce the volume of hits by revising their proposed search terms.

Defendants raise this issue here because Phase Two discovery will be much narrower in scope, especially if Plaintiffs provide hit counts in advance of their document review/production, and can be completed much more quickly where the document productions will in no way resemble the size and volume of the Gulf Coast production.

### (a)      Document Production and Written Discovery

While the parties have engaged in discovery with respect to the Selected Plaintiffs, Defendants' Phase One written discovery and document requests were limited to serving such discovery on the Selected Plaintiffs.  Defendants must still conduct other discovery relevant to the Selected Plaintiffs (e.g., individual witnesses and third party discovery), as well as conduct follow-up/clean-up discovery based upon information discovered in Phase One.

Aside from the discovery targeted at the Selected Plaintiffs, Defendants will also need to serve interrogatories and requests for admissions that are globally applicable to all of the Plaintiffs/Counterclaim Defendants.  This discovery is needed not only to prepare for trial, but also to amend DHL's counterclaims and add counterclaim defendants as merited.  DHL learned of the need to amend its counterclaims as a result of information discovered in Phase One.  The anticipated amendments include revising the claims against Selected Plaintiffs, adding counterclaim defendants, and revising the amounts due and owing from each because of changes in Unishippers franchise ownership—changes that DHL was unaware of prior to Phase One. DHL needs to take global discovery to clear up ambiguities related to franchise ownership.

As contemplated in the Attorney Planning Meeting Report, and agreed upon by the parties, Defendants still anticipate needing the following discovery.

- Interrogatories:

  o 25 "global" interrogatories, applicable and to be answered by each adverse party; and

  o Up to 25 "individual" or unique interrogatories, to be propounded on and answered by each individual adverse party

- Requests for Admission:

  o 25 "global" requests for admission, applicable and to be answered by each adverse party; and

  o Up to 25 "individual" or unique requests for admission, to be propounded on and answered by each individual adverse party

- Requests for Production:

Although the parties previously agreed with respect to the above written discovery, they could not reach agreement with respect to requests for production. For several reasons, Defendants believe the Court should not alter the Federal Rules of Civil Procedure by setting a predetermined or arbitrary limitation to the number of document requests. First, there is no procedural or legal basis to impose a limitation on the number of document requests before any discovery has commenced. Second, because Defendants have already produced to Plaintiffs all of the documents DHL produced in the related and recently deconsolidated Unishippers case (at Plaintiffs' request), any proposed limitation would immediately confer upon Plaintiffs an advantage in conducting discovery. That is, without having to exhaust a single document request, Plaintiffs will have been provided with all the documents produced by DHL in the Unishippers case—a case involving the same contracts and alleged breaches at issue in this case. While DHL has obtained relevant documents from Unishippers in the Unishippers case, Defendants have not obtained any discovery from the 121 plaintiffs other than the Selected Plaintiffs. Third, in the Unishippers litigation, after conducting initial discovery and exhausting

most of the 75 allotted document requests, DHL had to file a motion to amend the scheduling

order to obtain other documents highly relevant to its defense and counterclaims.  Defendants do

not want to bind themselves to fewer requests in this case involving substantially more plaintiffs

and a variety of claims not asserted in the Unishippers case.  Fourth, contrary to Plaintiffs' claim

that limiting the number of document requests would encourage the parties to serve focused

discovery, an arbitrary limitation on the number of document requests would only encourage the

parties to draft overly broad, as opposed to specific, document requests, to which the parties

would almost certainly object.   Fifth, although Plaintiffs have claimed that Defendants are

allowed 5,750 document requests under their proposal, this does Defendants no good if they need

to propound more than 50 requests on a single plaintiff.  Defendants should not be prevented

from taking relevant discovery due to the alleged burden created by the plaintiffs' own choice to

bring all of their claims in a single action.  Any burden imposed on each plaintiff to respond to

document requests is a burden that every plaintiff must undertake when filing a lawsuit, and it is

a burden shared by each defendant in this action.  Sixth, nothing in this scheduling order would

preclude a party from filing a motion for a protective order to limit unduly burdensome

discovery, or from moving to amend the scheduling order to place a limit on the number of

document requests if a party believes that discovery has become unduly burdensome.  But there

is no reason to place a limit on the parties at this time.

### (b)    Depositions

DHL has proposed allowing each side to take 10 depositions of anyone it chooses,

plus one additional deposition for each adverse party.  Under this proposal, Plaintiffs would be

allowed to depose up to 10 individuals, including DHL employees and third parties.  Plaintiffs

would also be entitled to one additional deposition of each of the two defendants (i.e., 12 in

total).   Defendants, likewise, would be permitted to depose up to 10 individuals, including employees of any of the plaintiffs and third parties.   Defendants also would be allowed to take one deposition of each of the 121 plaintiffs (i.e., 131 in total).   There is no reason for formalistic reciprocity that would allow the plaintiffs to depose up to 131 of DHL's employees just because DHL must have the right to take the deposition of each plaintiff that it is being sued by.

- Plaintiffs:  12
- Defendants:  131

## III.   PROPOSALS FOR DISCOVERY PLAN FOR THE REMAINDER OF THE CASE

### A.   Plaintiffs' Position

On October 29, 2010, Plaintiffs filed a Motion for Separate Trial and Stay of Discovery, in which they requested that the Court (1) order that the parties proceed with trial of the claims by and against the four plaintiffs that have participated in the first phase of discovery; (2) hold that the judgment in this first proceeding will have preclusive effect on the issues of fact and law common to the claims by and against all of the plaintiffs, pursuant to the doctrine of issue preclusion; and (3) stay all discovery concerning the remaining plaintiffs until after the resolution of the first proceeding, at which time, discovery may proceed with respect to the remaining issues.[10]   Defendants' response to the Motion is not due until November 15, 2010. Plaintiffs have requested that the Court decide the Motion before, or in conjunction with, setting a schedule for the remainder of the case, because the granting of the Motion will have a significant impact on the progress of the case.

In an abundance of caution, however, Plaintiffs include with this Status Report two separate Proposed Schedules.   The first Proposed Schedule (Scheduling Order For Separate

---

[10]     *See* Record Doc. 81, Plaintiffs' Motion for Separate Trials and Stay of Discovery (10/29/10); Record Doc. 82, Memorandum in Support of Plaintiffs' Motion for Separate Trials and Stay of Discovery (10/29/10).

Trials – Phase One) is appropriate if the Court grants Plaintiffs' Motion for Separate Trials and Stay of Discovery.  *See* Exhibit A.  This Schedule for separate trials includes a fact discovery deadline of March 15, 2011.  Prior to that deadline, Plaintiffs plan to take the depositions of Linda Heard and Beatrice Straub in connection with the claims by and against the four Selected Plaintiffs.  Plaintiffs also plan to take the corporate depositions of DHL and DPWN and up to an additional nine witness depositions discussed above.  This Schedule proposes a seven day trial, commencing on September 26, 2011, for all claims by and against the four Selected Plaintiffs.  This is the same trial date that DHL previously suggested to the Court.[11]

Only after resolution of that trial would discovery from the remaining Plaintiffs commence.  Discovery would be limited to individual damages issues on Plaintiffs' claims and DHL's counterclaims, if necessary.  At that point, it might be necessary to take additional depositions of several witnesses regarding their knowledge of information specific to the remaining Plaintiffs.  Plaintiffs propose to set a schedule for the remainder of the case until after resolution of the first trial.

Plaintiffs' Second Proposed Schedule (Scheduling Order For One Trial) includes dates appropriate for the remainder of this case if Plaintiffs' Motion for Separate Trials and Stay of Discovery is *not* granted.  *See* Exhibit B.  This Schedule includes a fact discovery deadline of March 15, 2012.  If each of the remaining 117 Plaintiffs is required to respond to all of the same discovery requests that were propounded to the four Selected Plaintiffs, and to produce the same types of information, including e-mail files, Plaintiffs estimate that completion of fact discovery would take at least 24 months, longer than the 15 months that Plaintiffs' have proposed in their second schedule.  *See* Exhibit B.  If, however, e-mail production was eliminated from the next phase of discovery, Plaintiffs estimate that fact discovery could be completed in 15 months and

---

[11]        Record Doc. 78, (Joint Status Report 8/27/10).

all of the deadlines reflected in Plaintiffs' second proposed schedule could be met.  This schedule proposes a twenty to twenty-five day trial, commencing on September 26, 2012, for all claims by and against the 121 Plaintiffs.

In summary, Plaintiffs respectfully urge the Court to enter a Scheduling Order in this case that is consistent with the Court's ruling on Plaintiffs' Motion for Separate Trials and Stay of Discovery.  Plaintiffs believe that separate trials in this matter will maximize judicial economy, expedite the resolution of this matter, and reduce the risk of jury confusion.  If Plaintiffs' Motion for Separate Trials is granted, Plaintiffs request entry of their Proposed Scheduling Order for Separate Trials – Phase One, with a trial date of September 26, 2011 for the first trial in this case.  *See* Exhibit A.  If Plaintiffs' motion is denied, Plaintiffs request entry of their Scheduling Order for One Trial, with a trial date of September 26, 2012, and an order finding that e-mail production is eliminated from the next phase of discovery.  *See* Exhibit B.

### B.     Defendants' Position

On October 29, Plaintiffs filed a Motion for Separate Trials and Stay of Discovery.  The Motion was filed by Plaintiffs without first engaging Defendants in any meaningful dialogue regarding (i) separate trials, (ii) the proposed preclusive effect of various findings of fact and rulings of law, or (iii) Plaintiffs' requested stay of discovery.  Given the potentially far-reaching implications of Plaintiffs' Motion, and the timing of the Motion, which was filed just before the submission of this Joint Status Report, Defendants will need until November 15, when the response to Plaintiffs' Motion is due, to respond to Plaintiffs' proposal.  Defendants understand that the Status Conference is scheduled for November 17 and will be prepared to discuss this issue at the Status Conference, but Defendants also would be amenable

to continuing the Status Conference to give the Court sufficient time to review and consider

Defendants' response to Plaintiffs' Motion.

Dated this 8th day of November, 2010.

Respectfully submitted,

/s/ Patrick S. McGoey
Kyle Schonekas, La. Bar No. 11817
Patrick S. McGoey, La. Bar No. 24549
Maria G. Marks, La. Bar No. 23208
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
650 Poydras Street, Suite 2105
New Orleans, Louisiana  70130
Telephone:  (504) 680-6050
kyle@semmlaw.com
patrick@semmlaw.com
maria@semmlaw.com

*Attorneys for all Plaintiffs*
*except Dandrea, Inc. and KMD, Inc.*

/s/ Khai LeQuang
Khai LeQuang
Christopher S. Ruhland
Edwin V. Woodsome, Jr.
William W. Oxley
Orrick Herrington & Sutcliffe
777 S. Figueroa St. Ste, 3200
Los Angeles, CA 90017-5855

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of November, 2010, I caused to be served via Court's ECF electronic filing system the foregoing Joint Status Report to the following:

- **Blaine J. Benard**
  blaine.benard@hro.com,tish.howell@hro.com
- **M. David Eckersley**
  mde@princeyeates.com,geniel@princeyeates.com,docket@princeyeates.com
- **Khai LeQuang**
  klequang@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com
- **Patrick S. McGoey**
  patrick@semmlaw.com,rachel@semmlaw.com
- **William W. Oxley**
  woxley@orrick.com,sspencer@orrick.com
- **Christopher S. Ruhland**
  cruhland@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com
- **Kyle D. Schonekas**
  kyle@semmlaw.com,jennifer@semmlaw.com
- **Andrea V. Timpa**
  andrea@semmlaw.com,andi@semmlaw.com,rachel@semmlaw.com
- **Edwin V. Woodsome , Jr**
  ewoodsome@orrick.com,nsweeney@orrick.com,ewestermeyer@orrick.com
- **Maria G. Marks**
  maria@semmlaw.com, rachel@semmlaw.com

*/s/ Patrick S. McGoey*
Patrick McGoey