Blaine J. Benard, #5661
J. Andrew Sjoblom, #10860
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Tel.: (801) 521-5800
Fax: (801) 521-9639
george.haley@hro.com
blaine.benard@hro.com

Edwin V. Woodsome, Jr. (*pro hac vice*)
Christopher S. Ruhland (*pro hac vice*)
Khai LeQuang (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 S. Figueroa St., Suite 3200
Los Angeles, CA 90017
Tel.: (213) 629-2020
Fax: (213) 612-2499
ewoodsome@orrick.com
cruhland@orrick.com
klequang@orrick.com

*Attorneys for Defendant DHL Express (USA), Inc.
And DPWN Holdings (USA), Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DHL EXPRESS (USA), INC., an Ohio corporation, et al.<br><br>    Defendants. | **DEFENDANTS DHL EXPRESS (USA), INC.'S AND DPWN HOLDINGS (USA), INC.'S STATUS CONFERENCE STATEMENT PURSUANT TO COURT'S NOVEMBER 14, 2010 ORDER**<br><br>Case No. 2:09-CV-221<br><br>Judge Dale A. Kimball<br>Magistrate Judge Paul M. Warner (referred)<br>Magistrate Judge David Nuffer (scheduling) |

Defendant/Counter-Claimant DHL Express (USA), Inc. ("DHL") and Defendant DPWN Holdings (USA), Inc. (together, "Defendants" or "DHL") respectfully submit this statement in response to the Court's Notice and Order Regarding Joint Status Report and Hearing Preparations dated November 14, 2010.

## I.     INTRODUCTION

The 121 plaintiffs in this case (collectively, "Plaintiffs") are or were franchisees of Unishippers Global Logistics, LLC ("Unishippers"), a former reseller of DHL shipping services. Unishippers became a DHL reseller in 2003 when DHL merged with Airborne, Inc. and became Airborne's successor under a National Account Agreement originally entered into by Airborne Freight Corporation and Unishippers Association, Inc. in 1994.  Plaintiffs were not parties or signatories to the National Account Agreement, nor were they involved in DHL's assumption of the Agreement.  In fact, many of the plaintiffs did not exist when the National Account Agreement was signed or when DHL assumed the Agreement.

Following the merger with Airborne, DHL invested billions of dollars to strengthen its domestic operations in the United States, but intense competition with carriers like FedEx and UPS, as well as severe downturns in the U.S. economy and the global express delivery market, forced DHL to make some reductions to its U.S. domestic infrastructure.  In 2008, Unishippers, unbeknownst to DHL, began negotiating with one of DHL's largest competitors, UPS, to replace DHL as its domestic and international carrier.  Unishippers asked DHL to amend the National Account Agreement to remove provisions in the Agreement that might have restricted its ability to sign a new agreement with UPS, and DHL and Unishippers began negotiating an amended or new reseller agreement.  Plaintiffs were not involved in these negotiations.  Amid the

negotiations, DHL also advised Unishippers that its U.S. domestic restructuring measures were proving unsuccessful, and as a result of this and the continuing decline of the U.S. and global economies, DHL would be announcing further reductions in its domestic shipping operations, including the possible cessation of domestic shipping.

After extensive negotiations, DHL and Unishippers entered into a new Reseller Agreement on October 6, 2008.  The Reseller Agreement incorporated many of the terms of the National Account Agreement, but deleted provisions that had previously hampered Unishippers' ability to sign a new agreement with UPS.  In turn, the Reseller Agreement gave DHL the right to terminate the Agreement upon 180 days notice if Unishippers entered into a definitive agreement with any carrier that competed with DHL.  Unishippers was given similar termination rights, but could terminate the Agreement on 90 days notice.  Plaintiffs did not negotiate or sign the Reseller Agreement, and they were not made parties to it.

On October 22, 2008, two weeks after signing the Reseller Agreement, Unishippers signed an agreement with UPS under which UPS would become Unishippers' exclusive express domestic and international carrier.  On November 10, 2008, consistent with its message to Unishippers several weeks earlier, DHL publicly announced that it would be ceasing to provide domestic shipping operations effective December 10, 2008 for some customers and January 30, 2009 for others.  After January 30, 2009, DHL would continue to provide its full range of international shipping services, including shipping to and from virtually every zip code in the United States and to and from over 200 countries and territories around the world.  Also on

November 10, 2008, DHL sent a letter to Unishippers advising Unishippers that it was terminating the Reseller Agreement effective May 4, 2009.[1]

The shutdown of domestic shipping operations on January 30, 2009 did not terminate the Reseller Agreement, nor did DHL purport to terminate the Reseller Agreement on that date. As stated in DHL's termination letter, Unishippers could continue to resell DHL's international shipping under the Reseller Agreement through May 10, 2009. And, as it turned out, Unishippers and its franchisees (including some of the plaintiffs in this case) did, in fact, continue to resell DHL's shipping services after January 30 and through the May 10, 2009 termination date. Many of those shipments, as well as earlier shipments, remain unpaid and are the subject of DHL's counterclaims against Plaintiffs.

## II. RELATION OF CLAIMS AND COUNTERCLAIMS TO THE CLAIMS IN THE UNISHIPPERS ACTION

The Unishippers Action is solely a breach of contract action against DHL. Unishippers also previously asserted a claim for rescission of the Reseller Agreement, but Judge Kimball dismissed that claim with prejudice in October 2009. DPWN is not a party in the Unishippers Action.

In this action, Plaintiffs have alleged five counts against DHL and three counts against DPWN. Plaintiffs' claims against DHL are for (1) rescission of the Reseller Agreement; (2) declaratory relief that DHL breached the National Account Agreement by ceasing domestic shipping or the Reseller Agreement by not providing adequate notice before ceasing domestic shipping, and that as a result of DHL's alleged breach, Plaintiffs are discharged of their

---

[1] After Unishippers received this letter, it disputed the effective date of the termination, and DHL agreed to modify the termination date to May 10, 2009.

obligations to pay DHL for unpaid shipments; (3) various alleged breaches of the National Account Agreement; (4) corresponding "bad faith" breaches of the National Account Agreement; and (5) breach of a separate "Ship Ready" contract.  Plaintiffs' claims against DPWN are for (1) unfair trade practices based on DHL's alleged failure to disclose its plans to cease domestic shipping; (2) tortious interference with contract based on DHL's alleged wrongful termination of the Reseller Agreement; and (3) tortious interference with prospective economic advantage based on the same alleged conduct.

DHL has alleged legal and equitable counterclaims against 115 of the 121 plaintiffs seeking payment for shipments that DHL provided and remain unpaid.

### A.     DHL's Counterclaim

DHL's counterclaims against Plaintiffs are not at issue in the Unishippers Action.  DHL's counterclaims in this Action will involve the resolution of facts specific to each counterclaim defendant—namely, which airway bills remain unpaid by each of them.  DHL's counterclaim against Unishippers for unpaid shipments are separate and do not overlap with DHL's counterclaims here.

### B.     Plaintiffs' Rescission Claim

DHL believes that Plaintiffs' claim for rescission of the Reseller Agreement, which is identical to Unishippers' rescission claim, has already been disposed of by the Order granting DHL's motion to dismiss the rescission claim in the Unishippers Action.  *See* Memorandum and Decision dated October 27, 2009 [Docket 124].  A true and correct copy of the Order is attached hereto as Exhibit 1.  In dismissing Unishippers' claim for rescission, Judge Kimball determined that by entering into an agreement with UPS to replace DHL as its international and domestic

carrier, Unishippers had already taken advantage of the main benefit it received under the Reseller Agreement.  Unishippers therefore could not seek to rescind the Reseller Agreement.  That ruling bars any claim of rescission by Plaintiffs in this case as well, even assuming Plaintiffs have standing, as alleged third party beneficiaries, to rescind an agreement they were not a signatory to (a dubious prospect).

DHL intends to file a dispositive motion on this issue here, in light of the Order in the Unishippers Action.

### C. Plaintiffs' Contract-Related Claims

Unlike Unishippers, Plaintiffs are not parties to the National Account Agreement or the Reseller Agreement.  Their contract-related claims are based on the theory that they are third party beneficiaries of the Agreements.  Plaintiffs would have to prove that they were intended third party beneficiaries under the Agreements to establish any potential liability against DHL in this Action.  This theory is not at issue in the Unishippers Action.

Plaintiffs also allege claims that are not alleged in the Unishippers Action.  For example, Plaintiffs allege that DHL breached the National Account Agreement by soliciting their customers.  Unishippers has not asserted this claim, and the claim presents facts specific to each individual plaintiff here.  Likewise, Plaintiffs' claim for breach of the "Ship Ready" contract is not at issue in the Unishippers Action.  Plaintiffs also allege that DHL breached the National Account Agreement by overcharging them for shipments.  That claim will depend on facts specific to each individual plaintiff here.

     **D.**     <u>**Plaintiffs' Claims Against DPWN**</u>

Plaintiffs' claims against DPWN are not at issue in the Unishippers Action. DPWN is the parent company of DHL, and Plaintiffs allege that DPWN interfered with DHL's alleged contracts with Plaintiffs (as alleged third party beneficiaries) by causing DHL to breach those contracts. This claim depends in part on whether Plaintiffs are third party beneficiaries of those contracts. As discussed above, the third party beneficiary theory is not at issue in the Unishippers Action.

Moreover, Plaintiffs' claim for unfair trade practices does not arise out of facts at issue in the Unishippers' Action.

**III.**     <u>**AMOUNT ALLEGED TO BE IN CONTROVERSY**</u>

Plaintiffs have not provided DHL with any estimate of their claims, instead deferring to expert analysis that has yet to be performed.

DHL's counterclaim seeks a total of $8,150,494 against 115 of the 121 plaintiffs for shipments that DHL made but was not paid for. However, DHL intends to file an amended counterclaim that will make minor changes to the amounts alleged to be owed by each counterclaim defendant. DHL is continuing to conduct discovery to confirm these amounts.

**IV.**     <u>**COSTS OF THIRD PARTY SERVICES IN DISCOVERY**</u>

In addition to requesting all documents that DHL produced in the Unishippers Action, Plaintiffs asked DHL to conduct additional searches for documents that resulted in the production of an additional 10,000 pages of documents. Because DHL has maintained the database of electronically-stored information collected from the custodians in connection with the Unishippers Action, the costs of conducting additional searches in this Action are reflected in

the cost of maintaining this database, which is approximately $20,000 per month, as well as additional vendor costs, administrative costs, and related legal costs. Vendor costs alone (not including attorney and paralegal time) to run Plaintiffs' proposed searches and provide hit count information to Plaintiffs in the initial phase of discovery in this Action were close to $10,000.

## V.     ASSESSMENT OF ELECTRONIC DISCOVERY

DHL has not yet reviewed all of the approximately 60,000 documents that Plaintiffs produced in phase one discovery, as many of these documents were only recently produced. DHL's review to date indicates that a high percentage of the emails that Plaintiffs produced were irrelevant, including personal emails and email advertisements that should not have been produced. As indicated in the Joint Status Report, DHL believes that many of these emails can be culled through a proper review by Plaintiffs, as well as greater cooperation in providing DHL with information about hit counts during the meet and confer process.

At the same time, DHL believes that electronic discovery has yielded numerous documents that are relevant or potentially relevant to the issues in this case, including but not limited to email admissions that establish amounts due and owing to DHL, documents that show that Plaintiffs were instructed not to pay DHL for shipments that DHL indisputably made, documents that show that Plaintiffs manufactured billing disputes to avoid paying DHL, documents that evidence Plaintiffs' understandings of the agreements between DHL and Unishippers, emails that evidence Plaintiffs' use of other carriers without DHL's knowledge, documents that directly refute Plaintiffs' contention that DHL breached certain provisions in the Agreements, and documents that show that Plaintiffs improperly aggregated the shipping volume of multiple small shippers to obtain greater volume discounts from DHL.

Based on the documents and other information provided to DHL during phase one, DHL intends to serve additional written discovery (interrogatories and requests for admission) to confirm the amounts in dispute related to its counterclaim.  In addition, during phase one, DHL was only permitted to take one deposition of each plaintiff selected for phase one discovery ("Selected Plaintiffs").  DHL used this deposition to take a Rule 30(b)(6) deposition.  However, based on the documents produced by the Selected Plaintiffs, DHL believes that there may be instances where individual witnesses (*e.g.*, Plaintiffs' current or former employees) may have unique percipient knowledge about the facts of the case and would need to be deposed in their individual capacity.  Thus, per DHL's proposal stated in the Joint Status Report, DHL does not believe it should be limited to one deposition per plaintiff.

In sum, DHL believes that electronic discovery has proven to be extremely valuable, but as mentioned above, believes that greater cooperation during the meet and confer process could reduce a large amount of irrelevant data produced by Plaintiffs and streamline electronic discovery in the next phase.

## VI. PLAINTIFFS' PROPOSAL FOR DEPOSITIONS

### A. Depositions of Defendants

Defendants proposed allowing each side to take one deposition of each opposing party, plus 10 additional depositions (which would have allowed Plaintiffs 12 total depositions).  Plaintiffs previously sought the right to take 125 depositions, which Defendants opposed.  Plaintiffs now propose that they be allowed to take a total of fifteen (15) depositions.  However, with respect to seven of the fifteen depositions, Plaintiffs wish to be allowed to depose these individuals multiple times or be allowed more than 7 hours of deposition time for them.

Defendants do not believe that the Court should permit Plaintiffs to take the depositions of the same individuals multiple times. This would impose an undue burden on the witnesses, most of whom are former DHL employees, who would be forced to take time off from work (or their personal lives) to be deposed. In fact, all of the witnesses whom Plaintiffs currently intend to depose multiple times (Ms. Benavidez, Ms. Straub, Ms. Miller, and Ms. Heard) are former DHL employees for which multiple depositions on common issues would cause undue burden and who have already expressed issues with scheduling and other difficulties as a result of having to miss work or other commitments for their depositions. Defendants therefore are amenable to allowing Plaintiffs the fifteen depositions they seek, with a maximum of 14 hours (two days) of deposition time total for the seven individuals whom Plaintiffs may want to depose more than once.

        B.      <u>**Depositions of Plaintiffs**</u>

Plaintiffs' proposal that Defendants be limited to three hours of a deposition for each Plaintiff is unreasonable and unacceptable. Defendants should not be prohibited from taking a complete deposition of each Plaintiff, especially when Defendants have no way of knowing at this time what knowledge or information any individual Plaintiff has. For example, one of the Selected Plaintiffs in this case produced 750,000 pages of documents, while another produced 3,910 pages. DHL should not be limited to a single three-hour deposition of a party that produces 50,000 documents consisting of 750,000 pages of documents. Each plaintiff must be assessed on a case by case basis. Moreover, most of the plaintiff depositions will be Rule 30(b)(6) depositions on a variety of topics, and in many cases it is highly unlikely that three hours will provide sufficient time for a meaningful deposition.

Defendants have every interest in scheduling and taking depositions in an efficient manner, but the Court should not restrict their right to take a full day deposition of each plaintiff that chose to sue Defendants. Defendants seek a fair and equitable discovery process, while Plaintiffs are attempting to prevent Defendants from obtaining discovery they are entitled to. The Court should reject Plaintiffs' proposal to limit Defendants' deposition time, as it would result in unfair prejudice to Defendants.

DATED this 8th day of December, 2010.

/s/ Blaine J. Benard
Blaine J. Benard, #5661
J. Andrew Sjoblom, #10860
HOLME ROBERTS & OWEN LLP
299 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Email: blaine.benard@hro.com
Tel.: (801) 521-5800
Fax: (801) 521-9639

Edwin V. Woodsome, Jr. (*pro hac vice*)
Christopher S. Ruhland (*pro hac vice*)
Khai LeQuang (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017
Tel.: (213) 629-2020
Fax: (213) 612-2499

*Attorneys for Defendant DHL Express (USA), Inc. and DPWN Holdings (USA), Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2010, I caused to be served a true and correct copy of the foregoing in the manner and upon those addressed below:

| | | |
|---|---|---|
| ☐ | U.S. Mail, postage prepaid | M. David Eckersley |
| ☐ | Hand Delivery | Prince Yeates & Geldzahler |
| ☐ | Facsimile | 175 East 400 South, Suite 900 |
| ☐ | Overnight courier | Salt Lake City, Utah 84111 |
| ☒ | E-mail and/or CM/ECF | mde@princeyeates.com |
| | | *Attorneys for Plaintiffs* |
| ☐ | U.S. Mail, postage prepaid | Kyle Schonekas |
| ☐ | Hand Delivery | Patrick S. McGoey |
| ☐ | Facsimile | Andrea V. Timpa |
| ☐ | Overnight courier | Katherine M. McCray |
| ☒ | E-mail and/or CM/ECF | SCHONEKAS, WINSBERG, EVANS & MCGOEY L.L.C. |
| | | 650 Poydras Street, Suite 2105 |
| | | New Orleans, Louisiana  70130 |
| | | kyle@swemlaw.com |
| | | patrick@swemlaw.com |
| | | andrea@swemlaw.com |
| | | katherine@swemlaw.com |
| | | *Attorneys for Plaintiffs* |

/s/ Tish Howell