# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| **GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DHL EXPRESS (USA), INC.,** an Ohio corporation; and **DPWN HOLDINGS (USA), INC.,**<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:09cv221**<br><br><br>**District Judge Dale A. Kimball**<br><br>**Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dale A. Kimball pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are (1) DHL Express (USA), Inc. ("DHL") and DPWN Holdings (USA), Inc.'s (collectively, "Defendants") motion to compel[2] and (2) Gulf Coast Shippers Limited Partnership, et al.'s (collectively, "Plaintiffs") motion for a protective order.[3] On June 2, 2011, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Patrick S. McGoey, and Defendants were represented by George M. Haley, Andrew S. Wong, and Amy Rudd. At the hearing, Plaintiffs' counsel provided to the

---

[1] *See* docket no. 60.

[2] *See* docket no. 182.

[3] *See* docket no. 167.

court for an in camera review the documents that are the subject of the motion to compel. After considering all of the materials provided, the arguments of counsel, and taking the motions under advisement, the court now issues the following memorandum decision and order.

## I. Motion to Compel

Defendants seek approximately 170 documents that Plaintiffs have designated as attorney-client and/or work-product privileged. Defendants argue that Plaintiffs have failed to demonstrate that the documents are privileged for several reasons. First, Defendants contend that most of the documents were not authored by or addressed to an attorney. Second, Defendants assert that many of the documents have already been produced in related litigation ("Unishippers's Case"). Third, Defendants argue that the documents have been disclosed to individuals and entities not party to the instant case. And lastly, Defendants state that all but a few of the documents predate this litigation and some by several months.

In response, Plaintiffs assert that the documents are protected under either the attorney-client and/or work-product privileges, as well as the common interest/joint defense doctrine. Specifically, Plaintiffs contend that the documents sought are privileged communications concerning possible litigation against Defendants and/or documents created in anticipation of litigation (1) by and among franchisee employees and their representatives; (2) by or to the Unified Franchisee Association ("UFA"), a franchisee representation body comprised of individuals appointed by Unishippers's franchisees to speak collectively on their behalf; and (3) by or to Unishippers's corporate representatives.

2

The parties agree that the applicability of the attorney-client privilege is governed by state law. *See, e.g.*, *Liftwise Master Funding v. Telebank*, 206 F.R.D. 298, 302 (D. Utah 2002). Under rule 504 of the Utah Rules of Evidence,

> [a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between the client and the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, and among the client's representatives, lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, in any combination.

Utah R. Evid. 504(b). A "client" is defined as "a person, including a public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services." Utah R. Evid. 504(a)(1). And, a "representative of the client" is defined as "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter." Utah R. Evid. 504(a)(4).

As stated above, Plaintiffs contend that because the documents are mostly emails by, between, and among the franchisees, the UFA, and Unishippers concerning possible litigation against DHL, they are "clearly confidential and created for the purpose of facilitating the rendition of professional legal services to [P]laintiffs."[4] Plaintiffs argue that it is irrelevant that an attorney was not a party to every communication because the communications were between individuals listed in rule 504(b) and were made for the purpose of obtaining legal advice. *See*

---

[4] Docket no. 215 at 4.

Utah R. Evid. 504(b). Plaintiffs further contend that because the UFA was authorized to solicit legal advice on behalf of all franchisees, it is immaterial that some of the franchisees who were party to the communication ultimately chose not to participate in the litigation. In addition, Plaintiffs likewise argue that when Unishippers filed its lawsuit against DHL, executives of Unishippers and leaders of the UFA had numerous conversations addressing the possibility of the franchisees joining the Unishippers's case and the UFA had consulted with various attorneys regarding potential litigation against DHL. Plaintiffs also assert that upon the advice of counsel, the UFA sent an email to all franchisees asking them if they were interested in pursuing litigation against DHL and requesting specific information from the franchisees. As such, Plaintiffs argue, the documents at issue were for the purpose of gathering information requested by counsel that the UFA had consulted to evaluate the franchisees' legal claims and must be protected from disclosure.

The court is not persuaded by Plaintiff's arguments. "The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client," *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990), that are "relate[d] to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). The party asserting a privilege bears the burden of establishing its applicability. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183, 1185 (10th Cir. 2010). The attorney-client "'privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.'" *See Munson v. Chamberlain*, 173 P.3d 848, 851 (Utah 2007) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). The privilege

4

"must be strictly constructed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). While this court has noted, "communications between non-attorney corporate employees 'for the purpose of obtaining legal advice' will be protected[;] . . . 'the purpose of obtaining legal services must be present'" from the face of the document. *Adams v. Gateway, Inc.*, No. 2:02-CV-106-TS, 2003 WL 23787856, at *11 (D. Utah December 30, 2003) (quoting *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988)). "For a communication between non-attorney employees to be held privileged, it must be 'apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice' or the document itself must 'reflect the requests and directions of counsel.'" *Id.* (quoting *Cuno, Inc.*, 121 F.R.D. at 203).

      The court has conducted an in camera review of the documents at issue and has determined that Plaintiffs have failed to demonstrate that the documents should be protected from disclosure under the attorney-client privilege. None of the documents are communications to or from counsel, with the exception of Bates Nos. IM000376575-76, IM000520127-28, IM000415287-88, IM000668489-91. These documents, however, are from (or reference) counsel for Unishippers, not counsel for Plaintiffs. While it is not necessary that an attorney be the author or recipient of the communication for the privilege to exist, *see id.* at *11 n.68, it is not apparent that the documents at issue were for the purpose of "transmitting the information to

5

counsel for advice" or that they "reflect the requests and directions of counsel." *Id.* at *11 (quotations and citation omitted). Furthermore, those few documents that appear to "reflect the requests and directions of counsel," *id.*, simply seek underlying factual information, which is not privileged. *See Munson v. Chamberlain*, 173 P.3d 848, 851 (Utah 2007).

Likewise, the court concludes that none of the documents qualify for work-product protection. The work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The purpose of the work-product privilege is to protect "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006). "Work product includes '[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence.'" *Adams*, 2003 WL 23787856, at *11 (quoting *In re Air Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990)). To be protected as work product, a document "must reflect the thinking of the attorney by being an expression from her, or, if a communication to her, it must reflect back her inquiry." *Phillip M. Adams & Assoc., LLC v. Winbond*, No. 1:05-CV-64 TS, 2010 WL 2991065, *3 (D. Utah July 27, 2010). Like the attorney-client privilege, the work-product privilege is not absolute and it may be waived. *See United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008).

Again, the court has reviewed the documents and has determined that Plaintiffs have failed to demonstrate that they should be protected from disclosure under the work-product

privilege. While the documents include discussions between and among Unishippers, the UFA, and franchisees, there is nothing specifically relating to the strategy, mental impressions, conclusions, opinions, or legal theories of Plaintiffs' counsel. *See Grace United Methodist Church*, 451 F.3d at 668. Accordingly, the court concludes that the documents are not protected by the work-product privilege.

The court recognizes that many of the documents were created in response to DHL's exit from the domestic market and Unishippers's claims and Plaintiffs' potential claims against DHL. That said, even assuming that these documents were privileged, the court concludes that any privilege that may have existed was waived by the voluntary disclosure of the documents to non-party franchisees, the UFA, and Unishippers. While Plaintiffs urge this court to conclude that the disclosure of the documents to these various non-parties does not waive the privilege under the common interest or joint defense doctrine, the court declines to do so. "The common interest doctrine . . . operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998). "'A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and client concerning legal advice . . . . The key consideration is that the nature of the interest be identical, not similar.'" *United States ex rel. [Redacted] v. [Redacted]*, 209 F.R.D. 475, 479 (D. Utah 2001) (quoting *NL Indus. Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-31 (D. N.J. 1992)).

7

In the instant case, this common interest doctrine does not apply. While Plaintiffs' and Unishippers's interest is similar, it is not identical. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998).

Because this court has determined that the documents at issue are not protected by the attorney-client or work-product privileges, Defendants' motion to compel is granted. As such, Plaintiffs are ordered to produce said documents to Defendants within twenty (20) days of the date of this order.

## II. Plaintiffs' Motion for Protective Order

Plaintiffs seek a protective order precluding the deposition of Scott Guilbeault. Plaintiffs contend that the information Defendants seek from Mr. Guilbeault is protected under the attorney-client and/or work-product privileges for essentially the same reasons as above. Plaintiffs further argue that Defendants are attempting to violate the order staying discovery with respect to the remaining 117 Plaintiffs by seeking to depose Mr. Guilbeault who is the owner of Zip Ship, Inc., one of those remaining Plaintiffs. Plaintiffs also assert that his deposition would be duplicative because Defendants are already deposing John Mark Ware, the President of the UFA. Plaintiffs assert that Defendants are seeking to depose Mr. Guilbeault for use in their upcoming trial in the Unishippers's case.

Defendants contend that while Zip Ship is not a Phase One Plaintiff, Mr. Guilbeault, as a member of UFA, was party to numerous non-privileged communications regarding Plaintiffs' awareness and knowledge of DHL's decision to cease domestic shipping and Unishippers's and its franchisees' efforts to obtain an alternate carrier before DHL's withdrawal from the domestic

8

market. Defendants further argue that they are not seeking to depose Mr. Guilbeault for use in the Unishippers's case, and counsel indicated at the hearing that Defendants would wait until after the Unishippers's trial to depose Mr. Guilbeault.

At the June 2, 2011 hearing, this court granted Plaintiffs' motion for a protective order to preclude discovery from the remaining 117 Plaintiffs until after the Phase One Trial. As such, the court concludes that because Mr. Guilbeault and/or Zip Ship are not part of the Phase One case, Defendants may not depose him. Accordingly, Plaintiffs' motion for a protective order is granted.

### III. Conclusion

(1) Defendants' motion to compel[5] is **GRANTED**. Plaintiffs are ordered to produce said documents to Defendants within twenty (20) days of the date of this order.

(2) Plaintiffs' motion for a protective order precluding the deposition of Mr. Guilbeault[6] is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 15th day of July, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[5] *See* docket no. 182.

[6] *See* docket no. 167.