IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GULF COAST SHIPPERS LIMITED PARTNERSHIP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DHL EXPRESS (USA), INC., and Ohio corporation, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:09-cv-00221-RJS <br><br> Judge Robert J. Shelby |

This case arises out of a commercial dispute between companies engaged in the business of shipping packages. Plaintiffs AEA Services, Inc., Gulf Coast Shippers Limited Partnership, Kasel Enterprises, LLC, and Lake Country Logistics, LLC sued Defendant DHL Express (USA) for breach of contract. DHL counterclaimed for breach of contract, open account, and quantum meruit.

Following a two-week jury trial, the court entered judgment in Plaintiffs' favor on all their claims against DHL, and in DHL's favor on one of its claims against three of the four Plaintiffs. Plaintiffs now move for an award of attorneys' fees, costs, and prejudgment interest. For the reasons stated below, the court grants in part and denies in part Plaintiffs' Motion.

**BACKGROUND**

Plaintiffs are current and former franchisees of Unishippers Global Logistics, LLC, a reseller of shipping services. In 1994, the predecessors to Unishippers and DHL entered into a written contract called the National Account Agreement. Under the NAA, Unishippers would promote DHL's shipping services, while DHL would provide wholesale rates to Unishippers and

its franchisees for DHL's domestic and international shipping services. DHL guaranteed in Section 2.05 of the NAA "that no other reseller will have equal or lower rates for comparable volume of business."[1] DHL further agreed in Section 5.05 "to deal with [Unishippers] and [Unishippers] Franchisees in good faith in all aspects of this Agreement."[2] And in Section 21, the parties agreed that:

> In the event of any litigation or arbitration between the parties with respect to this Agreement, the prevailing party shall be entitled to recover, in addition to any damages or other relief to which it may be entitled, reasonable attorneys' fees and costs of litigation or arbitration, as the court or tribunal may determine.[3]

The NAA defines "the Parties" to the agreement as DHL and Unishippers.

Consistent with the NAA, DHL and Unishippers renegotiated shipping rates on several occasions and entered into several so-called Amendments to reflect those changes. For instance, DHL and Unishippers executed Amendment 10 in late 2002. Amendment 10 said, "[a]ssessorial fees shall be determined in advance of any increase by written agreement of the parties hereto. In the absence of any agreement, the assessorial fees shall be twenty percent (20%) below any customary [DHL] rates."[4]

In May 2008, DHL announced that it would reduce shipping services in areas with low population density. These areas are known as "White Space" areas, and the initiative is known as the White Space Restructuring. The initiative affected roughly 4,000 rural zip codes.

DHL and Unishippers entered into another contract in October 2008 called the Reseller Agreement, in which DHL obtained the right to terminate the NAA without cause by giving Unishippers 180 days' advance written notice. DHL exercised that right on November 10, 2008,

---

[1] National Account Agreement (Dkt. 623, Ex. 1), § 2.05.
[2] *Id.* § 5.05.
[3] *Id.* § 21.01.
[4] *Id.* at Amendment 10, ¶ 11.

when it announced that it would be terminating the Reseller Agreement in May 2009. DHL also announced that it was going to stop providing domestic services after January 30, 2009.

Plaintiffs, and another 117 Unishippers franchisees, sued DHL in March 2009. Plaintiffs claimed that DHL breached the NAA by withdrawing domestic shipping services to the White Space areas in 2008, by overcharging Plaintiffs for shipments when it gave other resellers equal or lower rates than Plaintiffs for comparable volume of business, by overcharging Plaintiffs when it did not give them a 20% discount on assessorial fees, and by not dealing with Plaintiffs in good faith. Plaintiffs also claimed that DHL breached the Reseller Agreement by not providing Plaintiffs at least 180-days' notice that it was ceasing domestic shipping operations.

DHL asserted several counterclaims against Plaintiffs, including that Plaintiffs breached separate contracts between the parties that required Plaintiffs to pay DHL for shipping services that DHL provided for them. In the alternative, DHL also brought claims against Plaintiffs for open account and quantum meruit.

The court ruled on summary judgment that Plaintiffs were third-party beneficiaries of Section 2.05 of the NAA and of Amendment 10's assessorial fee provision. The court also ruled that DHL breached the NAA when it withdrew domestic shipping services to the White Space areas, and that it breached the Reseller Agreement when it failed to provide Plaintiffs at least 180-days' notice that it was ceasing domestic shipping operations.

The court held a two-week jury trial in March 2016. Plaintiffs presented evidence of their rate and assessorial overcharge damages through the testimony of their damages expert, Richard Hoffman. Hoffman testified that he arrived at each Plaintiff's rate overcharge damages figure by calculating and totaling the difference between the rates DHL charged the Plaintiff and the rates DHL charged competitors whenever the Plaintiff did not get the lowest rate. He also

testified that he arrived at each Plaintiff's assessorial overcharge damages figure by applying the agreed-upon 20% discount to the assessorial fees DHL charged the Plaintiff. And once DHL challenged the inclusion of certain assessorial overcharges in his calculations, he recalculated on the stand his assessorial damages figure in the event the jury found that those assessorial charges were not subject to the 20% discount. While Plaintiffs paid only about 97% of the rate and assessorial overcharge damages that Hoffman calculated, Hoffman testified that his calculations were a conservative measure of Plaintiffs' losses in view of the shipments and data he did not include in his calculations.

At the close of evidence, Plaintiffs abandoned their claim that DHL breached the NAA by not dealing with them in good faith. The jury found in Plaintiffs' favor on all their remaining claims. The jury also found that DHL proved its quantum meruit claims against three of the four Plaintiffs. The court entered judgment in Gulf Coast's favor for $4,136,714, in AEA Services' favor for $993,674, in Lake Country's favor for $1,052,023, and in Kasel Enterprises' favor for $2,540,888. The court also entered judgment in DHL's favor against Gulf Coast for $262,893, against AEA Services for $61,191, and against Kasel Enterprises for $195,021.

## ANALYSIS

Plaintiffs now request an award of reasonable attorneys' fees, non-taxable litigation costs, and prejudgment interest. The court first addresses Plaintiffs' request for fees and costs, before turning to their request for prejudgment interest.

## I. Attorneys' Fees and Costs

Plaintiffs seek a total of $3,622,083.02 in attorneys' fees and costs. The court must first analyze whether Plaintiffs are entitled to attorneys' fees and costs. Because the court concludes that Plaintiffs are not entitled to fees and costs, the court does not move to the second step and

address whether Plaintiffs' requested amount of fees and costs is reasonable.

Whether a party is entitled to attorneys' fees and costs in a diversity suit is a substantive question controlled by state law.[5] There is no dispute that Utah law governs the question at hand. Under Utah law, a party may recover fees and costs only if authorized by statute or contract.[6]

Plaintiffs first argue that the NAA authorizes an award of fees and costs. The court evaluates whether the terms of a contract allow an award of attorneys' fees and costs using the familiar tools of contract interpretation.[7] "The underlying purpose in construing or interpreting contractual provisions is to determine the intentions of the parties. Whenever possible, the intent of the parties is to be determined from the writing itself, with each provision being considered in relation to all others."[8] If attorneys' fees and costs are provided for by contract, then the fees and costs award "is allowed only in accordance with the terms of the contract."[9]

Plaintiffs maintain that they are entitled to fees and costs under Section 21 of the NAA. Section 21 provides that the prevailing party in "any litigation . . . between the parties with respect to this Agreement . . . shall be entitled to recover . . . reasonable attorney's fees and costs of litigation . . . as the court or tribunal may determine."[10] But as DHL notes, Section 21 applies only to litigation "between the parties" to the NAA: DHL and Unishippers. Although the NAA defines the "Parties" with a capital "P" as DHL and Unishippers, and Section 21 refers to the "parties" with a lowercase "p," the NAA uses a lowercase "p" to refer to DHL and Unishippers as the parties to the agreement all throughout. For example, the NAA provides that "the parties agree to renegotiate the terms and conditions herein in good faith,"[11] and that the NAA "may be

---

[5] *Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997) (en banc).
[6] *Reighard v. Yates*, 285 P.3d 1168, 1182 (Utah 2012).
[7] *See IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 196 P.3d 588, 600 (Utah 2008).
[8] *Id.* (citations omitted) (internal quotations marks omitted).
[9] *R.T. Nielson Co. v. Cook*, 40 P.3d 1119, 1125 (Utah 2002).
[10] National Account Agreement (Dkt. 623, Ex. 1), § 21.01.
[11] *Id.* § 2.01.

assigned by either party upon" written approval.[12] Yet there is no dispute that only DHL and Unishippers could renegotiate the NAA's terms and assign it.

While there are plenty of other examples where the NAA refers to DHL and Unishippers as the "parties,"[13] Plaintiffs cite—and the court has found—no provision in the NAA (aside from the definition provision) where DHL and Unishippers are referred to as the "Parties." And even though the court previously ruled that Plaintiffs are third-party beneficiaries of Section 2.05 and of Amendment 10, the court did not rule that Plaintiffs are third-party beneficiaries of Section 21.[14] Nor would it now. The court concludes that Section 21 unambiguously allows only the prevailing party in litigation between DHL and Unishippers to receive an award of attorneys' fees and costs.

Plaintiffs next contend that they are entitled to an award of attorneys' fees and costs under Utah's Reciprocal Fee Statute. The statute provides:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.[15]

"[A] court may award costs and attorney fees [under this statute] to a prevailing party in a civil action if [three] main conditions are met."[16] First, "the civil action must be based upon any

---

[12] *Id.* § 17.01.
[13] *See, e.g.*, *id.* § 15.01 (distinguishing between Unishippers and its franchisees where it states that "the parties agree on behalf of itself and its employees, agents, sales people [and Unishippers] Franchisees, to keep confidential" any proprietary information that "[t]he parties . . . may disclose to the other").
[14] "For a third party to have an enforceable right, the contracting parties must have clearly intended to confer a separate and distinct benefit upon the third party." *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 536 (Utah 1993) (citation omitted) (internal quotation marks omitted).
[15] Utah Code § 78B-5-826.
[16] *Anderson & Karrenberg v. Warnick*, 289 P.3d 600, 603 (Utah Ct. App. 2012) (quoting *Bilanzich v. Lonetti*, 160 P.3d 1041, 1045 (Utah 2007)) (internal quotation marks omitted).

promissory note, written contract, or other writing."[17]  Second, the promissory note, contract, or other writing "must allow at least one party to recover attorney's fees."[18]  And third, "the party requesting fees [must have] prevailed in a civil action based upon a written agreement."[19]  There is no dispute that conditions one and three are met here.  The parties dispute only whether the NAA allows at least one party in this litigation to recover attorneys' fees and costs.

In *Hooban v. Unicity International, Inc.*, the Utah Supreme Court explained that courts should analyze the "at least one party" requirement by asking a hypothetical: if the losing party in the litigation had prevailed, would it have been entitled to an award of attorneys' fees under the terms of the contract?[20]  There, the court held that the defendant was entitled to attorneys' fees because had the plaintiff "prevailed in this suit, he would have been a party to the contract upon which the suit is based and would have been contractually entitled to attorney fees."[21]

Asking the hypothetical here, however, leads to the opposite result.  If DHL had prevailed at trial, it would not be entitled to an award of attorneys' fees and costs under Section 21 of the NAA because, as discussed above, this litigation is not "between the parties" to the NAA.  As a result, Plaintiffs are not entitled to attorneys' fees and costs under the Reciprocal Fee Statute.

---

[17] *Id.* (quoting *Bilanzich*, 160 P.3d at 1045) (internal quotation marks omitted).  "[A]n action is 'based upon' a contract under the statute if a party to the litigation asserts the writing's enforceability as basis for recovery." *Hooban v. Unicity Int'l, Inc.*, 285 P.3d 766, 770 (Utah 2012) (citation omitted) (internal quotation marks omitted).
[18] *Warnick*, 289 P.3d at 603 (quoting *Bilanzich*, 160 P.3d at 1045) (internal quotation marks omitted).
[19] *Id.* (citing Utah Code § 78B-5-826).  Which party is the "prevailing party" depends on the context of each case.  *Id.*  Courts, however, look to several factors in making that determination, such as:

> (1) the contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.

*Id.* at 604 (quoting *R.T. Nielson Co.*, 40 P.3d at 1127).
[20] 285 P.3d at 771.
[21] *Id.* at 772.

## II. Prejudgment Interest

Plaintiffs next seek prejudgment interest on their rate and assessorial overcharge claims from May 31, 2009, the last day DHL provided services to Plaintiffs. Utah law governs whether Plaintiffs are entitled to prejudgment interest.[22]

Prejudgment interest is designed "to compensate a party for the depreciating value of the amount owed over time and . . . to deter parties from intentionally withholding an amount that is liquidated and owing."[23] A party may recover prejudgment interest where the damages are both complete and calculable.[24] Damages are complete where "the loss has been fixed as of a definite time."[25] Damages are calculable where they are "measurable by facts and figures," and "can be calculated with mathematical accuracy in accordance with well-established rules of damages."[26] For example, prejudgment interest is appropriate "where the amount due under a contract [is] ascertainable by calculation," "even if the method of calculating is uncertain, [] the damage figures change," or the parties dispute the amount due.[27]

Prejudgment interest is inappropriate, however, where the amount of the loss cannot be calculated with mathematical accuracy.[28] Such losses "are those in which damage amounts are to be determined by the broad discretion" of the fact finder,[29] requiring the fact finder to "assess damages based on a mere description of the wrongs done or injuries inflicted."[30] That said, the damage figures need not be known at the time the damages accrued, nor do they need to remain

---

[22] *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009).
[23] *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 275 (Utah 2009) (citation omitted) (internal quotation marks omitted).
[24] *See Goodyear*, 576 F.3d at 1055.
[25] *Encon*, 210 P.3d at 272 (citation omitted) (internal quotation marks omitted).
[26] *Id.* (citation omitted) (internal quotation marks omitted).
[27] *Id.* at 273.
[28] *Id.* at 272.
[29] *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 666 (Utah 2016) (citation omitted) (internal quotation marks omitted).
[30] *Encon*, 210 P.3d at 273 (citation omitted) (internal quotation marks omitted).

static throughout litigation.[31] The focus is instead "on the measurability and calculability of the damages."[32] And "[t]he critical consideration . . . is the manner in which damages are proven."[33]

The parties do not dispute that Plaintiffs' overcharge damages were complete as of May 31, 2009. While the parties dispute whether those damages are calculable, the court agrees with Plaintiffs that their overcharge damages were calculable with mathematical accuracy. As discussed above, Hoffman calculated those damages in a straightforward, predictable manner.

DHL argues that a prejudgment interest award is inappropriate because Hoffman made numerous estimates and assumptions in calculating Plaintiffs' damages. For example, Hoffman's damages calculations were based on the amounts DHL charged each Plaintiff, rather than the amounts each Plaintiff actually paid. In support, DHL relies on *ClearOne Communictations, Inc. v. Chiang*,[34] in which the Tenth Circuit held that "[t]he use of proxies or estimates . . . does not constitute the mathematical certainty necessary for an award of prejudgment interest."[35] But that holding came in the context of the court considering whether prejudgment interest was proper on a future lost profits award.[36] As the Tenth Circuit observed, "Utah courts are reluctant to award prejudgment interest on lost profits" because their "very nature . . . injects an air of uncertainty and speculation into the calculation of damages."[37] Indeed, "[d]amages in such cases do not represent an actual, ascertainable loss; they represent the factfinder's best approximation of that loss."[38] Here, however, Hoffman's overcharge damages calculations represent an actual loss. To be sure, he based his calculations on the amounts DHL charged each Plaintiff, rather than the amounts each Plaintiff actually paid. But there was evidence presented at trial that each Plaintiff

---

[31] *Id.* at 272.
[32] *Id.*
[33] *Goodyear*, 576 F.3d at 1057.
[34] 432 F. App'x 770 (10th Cir. 2011) (unpublished).
[35] *Id.* at 775.
[36] *See id.* at 774–75.
[37] *Id.* at 774.
[38] *Id.*

9

actually paid 97% of the amount DHL charged, and Hoffman testified that his damages figures were conservative in view of the shipments and data he did not include in his calculations.

DHL also urges the court not to award Plaintiffs prejudgment interest because neither the judgment nor Plaintiffs break down how much Plaintiffs are owed for each of their various claims. But the jury verdict form clearly states how much the jury awarded each Plaintiff on its rate and assessorial overcharge claims.[39] And DHL does not explain why the verdict form is insufficient to establish the amounts on which Plaintiffs seek prejudgment interest.

Finally, DHL insists that Plaintiffs are not entitled to prejudgment interest because they failed to apply an offset to their overcharge damages awards accounting for the jury's finding that DHL proved its quantum meruit claims against three of the four Plaintiffs. The Utah Court of Appeals held in *Radman v. Flanders Corp.*[40] that an offset must be applied to competing damages awards before calculating prejudgment interest when the parties' claims arise out of the "same transaction," and the defendant's counterclaim arose before the plaintiff's claim.[41] An offset was appropriate in *Radman* because both parties' claims were based on the same written contract between the parties.[42]

An offset is likewise appropriate here. Hoffman included in his assessorial overcharge damages calculations charges levied through May 2009, while DHL's quantum meruit claims were based on shipments it provided Plaintiffs starting in 2008. As a result, some of Plaintiffs' overcharge claims and some of DHL's quantum meruit claims arose out of the same shipments— or transactions—between the parties. Because prejudgment interest is designed to compensate a party for the depreciating value of money it would have otherwise had during the prejudgment

---

[39] *See* Dkt. 591.
[40] 172 P.3d 668 (Utah Ct. App. 2007).
[41] *Id.* at 676.
[42] *Id.* at 671.

10

period,[43] Plaintiffs are not entitled to prejudgment interest on the full amounts the jury awarded them for those overlapping transactions without a setoff first being applied to account for the amounts the jury also awarded DHL on those transactions.

However, the parties have submitted no evidence establishing which shipments are overlapping transactions and which are not. As a result, the court is unable to determine the appropriate offset amounts to apply. But Plaintiffs are nevertheless entitled to prejudgment interest on the amounts not in dispute. Even if every shipment that formed the basis for the jury's quantum meruit award for DHL was an overlapping shipment on which the jury awarded overcharge damages to Plaintiffs, each Plaintiff is still entitled to an award of prejudgment interest on the total overcharge damages awarded to it minus the amount of the corresponding award to DHL. The resulting sums represent the minimum amounts on which each Plaintiff is entitled to prejudgment interest.

The jury awarded total overcharge damages to Gulf Coast in the amount of $3,744,761, to AEA Services in the amount of $870,500, to Lake Country in the amount of $791,938, and to Kasel Enterprises in the amount of $2,343,980.[44] The jury also awarded DHL $262,893 against Gulf Coast, $61,191 against AEA Services, and $195,021 against Kasel Enterprises.[45]

Offsetting these amounts, Gulf Coast is entitled to prejudgment interest on a minimum of $3,481,868; AEA Services is entitled to prejudgment interest on a minimum of $809,309; and Kasel Enterprises is entitled to prejudgment interest on a minimum of $2,148,959. Lake Country is entitled to prejudgment interest on the total $791,938 the jury awarded because DHL failed to prove its quantum meruit claims against it.

Plaintiffs are entitled to prejudgment interest on these amounts from May 31, 2009,

---

[43] *Encon*, 210 P.3d at 275.
[44] *See* Dkt. 591.
[45] *Id.*

through the date of the judgment, May 13, 2016. And in view of the Utah Supreme Court's decision in *USA Power, LLC v. PacifiCorp*, the applicable interest rate is "the federal postjudgment interest rate as of January 1 of each year, plus 2%."[46]

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Attorney's Fees, Costs of Litigation, and Prejudgment Interest. (Dkt. 623.)

SO ORDERED this 7th day of September, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[46] 372 P.3d at 670 (quoting Utah Code § 15-1-4).